## COUNTY OF JUNIATA v. J. M. McDONALD.

ERROR TO THE COURT OF COMMON PLEAS OF JUNIATA COUNTY.

Argued May 23, 1888—Decided October 1, 1888.

One who gives such information to a sheriff as enables the latter to capture an escaped prisoner, even if he go with the sheriff and act as one of his posse, does not thereby become entitled to recover a reward offered by the county for the capture and delivery of the prisoner to the county jail.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 122 January Term 1888, Sup. Ct.; court below, No. 4 April Term 1887, C. P.

On February 10, 1887, an action of assumpsit was brought by J. Miller McDonald against the county of Juniata, to recover a reward offered for the capture of an escaped prisoner. The defendant pleaded, non assumpsit and payment with leave, etc.

At the trial on September 10, 1887, it was made to appear, in substance, that on May 1, 1886, W. Josiah McMeen was convicted of murder in the first degree in the Court of Oyer and Terminer of Juniata county and was thereupon sentenced to be hanged in July, following. Pending an application to the Board of Pardons for the commutation of his sentence, he remained in confinement in the county prison at Mifflintown. On the night of November 14, 1886, he broke prison and escaped, with a colored man named Aaron Carter, awaiting trial on a charge of adultery. The next morning the county com-

Charge of Court below.

missioners met and, after resolution passed, published the following offer :

## $400 REWARD !

The commissioners of Juniata county will pay for the capture and delivery of the above named W. Josiah McMeen to the jail of Juniata county the sum of $400.

O. P. BARTON,

W. N. STERRETT,

J. T. DIMM,

Commissioners of Juniata County.

On the evening of November 22d, in consequence of information received, sheriff Fowles, his deputy Lapp, with the plaintiff, found and arrested Carter at the house of his father, about six miles east of Mifflin.   The plaintiff had been told of a remark made by one William Kauffman which indicated a friendly feeling towards McMeen, and on the way out to Carter's, he repeated what he had heard to the sheriff.   The next day sheriff Fowles, deputy Lapp, the plaintiff, and one Daniel Beashore went to the barn of William Kauffman, and found McMeen concealed in the straw-mow, when they arrested him and returned him to prison.   The sheriff testified that he was led to go to Kauffman's solely by the information he had received from the plaintiff.

The facts stated appearing in the plaintiff's case, William Kauffman was called in behalf of the defendant :

Defendant's counsel propose to show that the witness was at the barn ; that the sheriff, deputy Lapp, Beashore and McDonald came there, and that the sheriff seemed to be in command of the party ; that he was riding with Hetrick, and the other three were riding in the carriage, and that there was nothing done until the sheriff came up, and when the sheriff came up he came over to the fence where witness was, and said, " We are searching some barns, and we thought we may as well search your barn as we go along."   Plaintiff's counsel object because it is immaterial and irrelevant.

By the court: Objection sustained ; evidence rejected.[2]

The effect of the testimony on both sides, and the nature of the defence made, appear sufficiently in the charge to the jury, BARNETT, P. J. :

Charge of Court below.

James Miller McDonald sues the county of Juniata to re-
cover a reward offered for the apprehension of an escaped
prisoner. It is admitted that William Josiah McMeen escaped
from prison. It is admitted that a reward of $400 was offered
for his recapture; and it is admitted that he was recaptured
and returned to the jail of this county. The evidence shows
that some four persons were present when the actual capture
took place. The sheriff, his deputy, Mr. McDonald and Mr.
Beashore were present, and the question is as to who was mainly
instrumental in effecting this capture. The prisoner was in
jail in the custody of the sheriff; it was his duty to keep him
until legally removed; he escaped from jail, and when he did
so it was the duty of the sheriff to have him recaptured and
returned, if possible.

If the sheriff himself and the deputy made the capture, or
were mainly instrumental in effecting it, they simply dis-
charged their duty and they would be entitled to no reward,
and therefore no person would have earned this reward.
[There were two other persons present who owed no special
duty with regard to the recapture of this prisoner. It does not
appear from the evidence that Mr. Beashore was present at
the instance of Mr. McDonald or that he was invited by the
sheriff, but it appears he was present at the invitation of Mr.
Lapp, the deputy-sheriff.] [4] The sheriff testifies that on Mon-
day evening, November 22, 1886, Squire McDonald, deputy
Lapp and himself got into a two-horse carriage and went out
to old Mr. Carter's, and on the road going out they were talk-
ing about this matter, and Mr. McDonald told him he had been
with what was called Mr. Parker's party to Henry Moist's, and
that he had a conversation with Henry Moist who asked him
why they searched there and whether they blamed him with
concealing McMeen. Henry Moist also stated that his feelings
were against McMeen, but Mr. Moist said he had had a con-
versation with a party of men and one of them told him that
he wouldn't arrest McMeen if he did find him, but if he had no
overcoat he would give him his, and that man was William
Kauffman; and from that information Mr. Beashore, Mr. Mc-
Donald, the sheriff and deputy-sheriff proceeded to William
Kauffman's and effected the capture. Mr. McDonald also tes-
tifies that he had this conversation with Mr. Moist and was led

from that conversation, in connection with other things that came to his knowledge, to believe this escaped prisoner was to be found in the barn of Mr. Kauffman, and he so informed the sheriff, and it was at his instance the party was organized and went and effected the capture.

If this statement is the true one, if the jury can rely upon that statement as the very truth of the case, and believe that Mr. McDonald was the party who mainly and principally succeeded in making this escaped prisoner's recapture, then he would be entitled to the reward offered by the commissioners for the recapture and the jury should find a verdict in his favor. [But it is contended on the part of the defendant that Mr. McDonald was not the one principally and mainly influential in effecting this capture, and it alleges that the sheriff was the one who succeeded in doing so and that the others were merely his assistants, and to sustain this they rely upon some contradictions and conflict in the testimony of some of the witnesses.] [5] They have called Mr. Henry Moist and he, while not positively denying the fact, testifies that he has no recollection of having had any such conversation with the plaintiff, in which he told him anything in regard to what Mr. Kauffman had said. Mr. Abraham Moist also denies that the occurrences took place at his barn, as they were testified to by the sheriff and Mr. McDonald. The latter stated that they had gone to Mr. Moist's simply to satisfy the clamor of the public; that they did not expect and did not believe that the prisoner was in the barn of Mr. Moist, but that simply because the people were urging them to go in search of the prisoner they went, in obedience to the clamor of the public, without any expectation or hope of finding him there, and they testify as to the circumstances and incidents attending their arrival at the barn and the conversation occurring between them and Mr. Moist. On the contrary Mr. Moist testifies that the sheriff and Mr. McDonald came there and the sheriff said to him, after trying to convince him that the prisoner was there, "We know that he is here and you may as well give him up," and that Mr. McDonald also said, "We know he is here and you may as well give him up." From this it is contended on the part of the defendant that there is a conflict in the testimony between Mr. Abraham Moist and the sheriff and Mr. McDonald.

[It is also contended on the part of the defendant that, if the testimony of Mr. Daniel Beashore is relied upon, as the very truth of the case, it would go very far toward showing that, instead of the plaintiff being the one mainly and principally instrumental in effecting this capture, he was simply assisting the sheriff; that the sheriff was the principal; the organized party was under his control and management, and they were the assistants to obey his will. Mr. Beashore testifies that he was one of the party and that when they arrived at the Basin, adjoining this town, Mr. McDonald asked, "Where shall we go?" and the sheriff said, "To Kauffman's barn!" that the sheriff was riding with David Hetrick and that, when they were passing an old vacant house, Mr. Lapp asked the sheriff whether they should search this building, and the sheriff replied "No, go on to Kauffman's barn!" If you should find that this was the fact it would be very strong evidence to indicate that it was the sheriff who was directing the manner in which this search should be made and the place to which their attention should be directed; because, if it be true that Mr. McDonald asked him in the first place where they should go and the sheriff replied that they should go to Kauffman's barn, it would undoubtedly be the sheriff who had the knowledge of the locality and whereabouts of the prisoner, and he was the one who was directing and managing those who were in search of the prisoner; that Mr. McDonald was simply inquiring as to his duties and as to where he should go, being obedient to the commands and directions of the sheriff.] [6] . . . .

Therefore, you will take into consideration the testimony of the sheriff, his deputy, Mr. Lapp, and Mr. McDonald, on the one side, as it is modified by the defendant's witnesses on the other, and, after considering the whole testimony in the case and comparing it, ascertain for yourselves, where the weight or preponderance is to be found. If the plaintiff has satisfied your minds by the preponderance or weight of the evidence that he was mainly instrumental in effecting this recapture then you should find for him the amount offered by the commissioners, and, if you see proper, with interest from the date that the demand was made and refused by the commissioners; as to the question of interest you can do as you think right and proper. On the other hand, if the plaintiff has not so sat-

Arguments.

isfied you that it was he that was mainly instrumental in effecting this capture, then you should find for the defendant. We submit it as a question of fact to you under all the evidence in the case to render such verdict as you think to be right and proper. If you believe that the plaintiff was mainly instrumental in effecting this recapture then find for the plaintiff, and if you find that he was not then find for the defendant.

The jury returned a verdict for the plaintiff for $400. A rule for a new trial having been discharged, judgment was entered, when the defendant took this writ and assigned for error, inter alia:

    2. The refusal of defendant's offer.[2]

    4–6. The parts of the charge embraced in [ ] [4 to 6]

*Mr. Wm. M. Allison* and *Mr. Alfred J. Patterson* (with them *Mr. J. Howard Neely*), for the plaintiff in error:

    1. Sheriff Fowles, on cross-examination, declared positively : " Now, understand me; I would not have gone to William Kauffman's at all, had it not been for the information I got from Mr. McDonald." The object of the evidence proposed in the offer overruled was to contradict the sheriff by his declaration at Kauffman's : " We are searching some barns, and we thought we might as well search your barn as we went along;" his declaration and conduct showing that he was out with a posse on a general search with no defined place in view.

    2. Did the testimony justify the instruction that " there were two other persons present who owed no special duty with regard to the capture of the prisoner?" The plaintiff was with the party at the sheriff's express request, and is it not fair to infer that both the plaintiff and Beashore were deputies on the occasion, for the particular duty of capturing McMeen? The defendant complains that the court did not state fully its main point of defence. That was, in addition to what the court did state, that the conduct of the plaintiff, after becoming on Monday as fully satisfied of the hiding place of McMeen, as he alleges he was, and not going to Kauffman's barn to search it until the middle of the afternoon on Tuesday, strongly discredited his claim and testimony. Statements made in the charge which are in conflict with the evidence,

Opinion of the Court.

and remarks or comments therein which tend unduly to weaken the effect of the testimony adduced by the unsuccessful party, are grounds for reversal: Bughman v. Byers, 21 W. N. 494.

*Mr. B. F. Junkin* (with him *Mr. George Jacobs*), for the defendant in error:

The offer was irrelevant. It was unimportant who seemed in command of the party, what the sheriff said, what apology he offered to Kauffman for searching his barn, or that the others waited until the sheriff came up. The sheriff was there because of the information derived from the plaintiff, and the plaintiff was along. The question was, who was chiefly instrumental in bringing about the arrest of McMeen, and what the sheriff said in the absence of the plaintiff could not affect him. No cause of complaint is discovered in the instructions assigned for error in the other assignments.

OPINION, MR. CHIEF JUSTICE GORDON:

This case was tried upon an entirely false theory. It seems to have been taken for granted, both by court and counsel, that if in fact McDonald, the plaintiff, gave to the sheriff such definite information as to enable him to discover the escaped criminal, he, the plaintiff, was entitled to the reward offered by the county commissioners. A reading, however, of the offer made by those commissioners ought to have corrected the mistake, and led to a proper trial and judgment. " The commissioners of Juniata county will pay, for the capture and delivery of the above-named W. Josiah McMeen to the jail of Juniata county, the sum of four hundred dollars." A mere reading of this paper settles the whole controversy; the reward was not offered for information as to the prisoner's whereabouts, but for his capture and delivery. How then could one be entitled to that reward who neither captured nor delivered him? Admitting then, that the plaintiff gave the sheriff accurate information as to where the culprit could be found, and that he went with him and acted as one of his posse, yet on that officer fell the duty of arrest, and the plaintiff was relieved of all responsibility.

It seems to have been assumed in the court below that the sheriff had, in consequence of the information conveyed to

him, become the mere implement in the hands of the plaintiff for the arrest and delivery of the escaped prisoner. But a greater mistake than this could not have been made, for the sheriff was bound by law to make that arrest at all hazards just as soon as from any source he discovered the place of McMeen's concealment; hence he was not, and could not have been acting for McDonald, but rather for himself. Under this theory of the case we must sustain the second assignment of error, though possibly the offer, for the purpose intended, was irrelevant, yet in fact, and for another purpose, it was relevant, that is, to show that the sheriff was the person active in making the arrest, and that McDonald and others were acting under him. Under the circumstances above narrated we feel ourselves constrained to reverse this case, and as under the conditions of the reward offered by the commissioners, the plaintiff's claim cannot be sustained, we must do so without ordering a new venire.

The judgment is reversed.